552 S.E.2d 10

### In the Matter of ANONYMOUS MEMBER OF the SOUTH CAROLINA BAR, Respondent.

No. 25346.

Supreme Court of South Carolina.

Heard June 6, 2000.

Decided Aug. 20, 2001.

---

PER CURIAM.

As the result of our consideration of an attorney disciplinary matter in which an attorney was charged with commission of misconduct based on alleged discovery abuse, for the benefit of the bar we take this opportunity to address a senior attorney's duty to supervise junior attorneys and attorney conduct in depositions.

## I. RULE 407, SCACR, RULE 5.1[1]

### A. Overview of Rule 5.1

 Rule 5.1[2] governs the responsibilities of partners and lawyers who, directly or indirectly, supervise other lawyers. Attorneys in South Carolina do not have "vicarious liability"[3] for the ethical violations of other attorneys. How-

---

**1.** Rule 407, SCACR contains the South Carolina Rules of Professional Conduct. Rule 407, SCACR is where Rule 5.1 and the other Rules of Professional Conduct referenced in this opinion may be found.

**2.** The full text of Rule 5.1 states:

RULE 5.1. RESPONSIBILITIES OF A PARTNER OR SUPERVISORY LAWYER

(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) The lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) The lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

**3. Vicarious Liability.** Liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties. *Black's Law Dictionary* 927 (7 th ed.1999).

ever, vicarious liability is *not* the issue when a supervised attorney violates the Rules of Professional Conduct. The issue is whether the supervising attorney violated Rule 5.1 by failing to satisfy the ethical responsibilities of a partner or supervisory lawyer in relation to the other supervised attorney's misconduct. If an attorney fails to satisfy the supervisory requirements of Rule 5.1 by actions or omissions, that attorney violates the Rules of Professional Conduct and can be sanctioned completely separate from any sanction issued for the underlying actions or omissions of the supervised attorney.

 Rule 5.1 addresses three different levels of supervision. First, under Rule 5.1(c), attorneys will be responsible for another lawyer's violation of the Rules of Professional Conduct if they ratify or fail to mitigate known misconduct committed by an attorney they supervise. Second, under Rule 5.1(b), attorneys with "direct supervisory authority" over another attorney who violates the Rules of Professional Conduct will be disciplined if they failed to "make reasonable efforts" in their supervision. Attorneys can be sanctioned under Rule 5.1(b) even if they had no knowledge of the supervised attorney's inappropriate behavior. Lastly, under Rule 5.1(a), partners in a law firm have a generalized duty to put into place systematic measures to help prevent attorney misconduct.

## B. Rule 5.1(c)

 Rule 5.1(c)(1) and (2) create a heightened form of liability for attorneys. These sections provide:

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(1) The lawyer *orders* or, with knowledge of the specific conduct, *ratifies* the conduct involved; or

(2) The lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and *knows of the conduct at a time when its consequences can be avoided or mitigated* but fails to take reasonable remedial action.

(Emphasis added). In addition to liability for ordered or ratified misconduct, Rule 5.1(c) requires a law firm partner to take action or face personal liability when the partner discov-

ers another attorney in the firm has engaged in ethical misconduct. Once the partner is on notice of another attorney's misconduct, this subsection imposes a clear duty to take remedial measures to avoid or mitigate the consequences of that behavior. Rule 5.1(c)'s liability is not vicarious liability because the obligation does not arise merely from the relationship between the attorneys. The supervising attorney's ethical violation will be based on his participation in the underlying misconduct or his failure to mitigate it.

## C. Rule 5.1(b)

Under Rule 5.1(b), lawyers having "direct supervisory authority over another lawyer" are ethically bound to take "reasonable efforts" to ensure that junior lawyers have conformed to the Rules of Professional Conduct. This subsection provides:

> (b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

As the comment explains, "Professional misconduct by a lawyer under supervision could reveal a violation of paragraph (b) on the part of the supervisory lawyer even though it does not entail a violation of paragraph (c) because there was no direction, ratification or knowledge of the violation." Rule 5.1 cmt. Therefore, in these situations, this Court will sanction an attorney not for ordering or ratifying the underlying violation of the Rules of Professional Conduct, but because as a lawyer with "direct supervisory authority over another lawyer" the attorney failed to "make reasonable efforts" to ensure the supervised attorney conformed to the Rules of Professional Conduct.

■ In order to sanction an attorney under this subsection, this Court must make three separate findings:

(1) The attorney in question was a lawyer with "direct supervisory authority" over the offending attorney;

(2) The supervised attorney failed to conform to the Rules of Professional Conduct;[4] and

---

4. In some situations, the actions of several supervised attorneys when taken together may result in a violation of the Rules of Professional

(3) The supervising attorney failed to "make reasonable efforts" in an attempt to ensure the supervised attorney followed the Rules of Professional Conduct.

## 1. Direct Supervisory Authority

A close examination of each case will determine whether an attorney had direct supervisory authority over another. "Whether a lawyer has such supervisory authority in particular circumstances is a question of fact." Rule 5.1 cmt. In the past, this Court has found a violation of Rule 5.1 where a senior attorney handed over the entire discovery process to an associate who then violated the Rules of Professional Conduct. *See In the Matter of Moore*, 329 S.C. 294, 494 S.E.2d 804 (1997). As this case illustrates, Rule 5.1 does not require that an attorney be the day-to-day supervisor of the attorney committing the misconduct to create liability. The key to liability is whether there was *authority* over the violating attorney.

## 2. Reasonable Efforts

As noted by the comment to Rule 5.1:

The measures required to fulfill the responsibility prescribed in paragraphs (a) and (b) can depend on the firm's structure and the nature of its practice. In a small firm, informal supervision and occasional admonition ordinarily might be sufficient. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate procedures may be necessary.

Rule 5.1 cmt. This comment makes clear that a senior attorney in a large firm has an even greater responsibility than an attorney in a smaller practice to enact formal office procedures to ensure compliance with the Rules of Professional conduct. Furthermore, attorneys who attempt to shield themselves from any direct liability under Rule 5.1(c) by distancing themselves from attorneys under their direct supervisory authority may find themselves guilty of a failure to properly supervise under Rule 5.1(b).

---

Conduct even where their individual actions do not rise to the level of a violation.

As stated in the comment to Rule 5.1, "Partners of a private firm have *at least* indirect responsibility *for all* work being done by the firm . . ." Rule 5.1 cmt. (emphasis added). Again, this section does not establish a vicarious liability standard where supervisory attorneys will be sanctioned every time another attorney violates the Rules of Professional Conduct. Under Rule 5.1(b), supervisory attorneys can employ many different procedures depending on the size of the firm to review the work of their subordinates and effectively meet their responsibilities recognized by Rule 5.1.

### D. Rule 5.1(a)

Rule 5.1(a) establishes that all partners in a law firm have a generalized responsibility for the actions of other members in their firm. The rule states:

(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

As mentioned above, all partners in a law firm, no matter the size, have at least indirect responsibility for the work done by the firm. *See* Rule 5.1 cmt. The liability here is not vicarious liability for the unethical conduct of another attorney, instead this subsection places on all partners a responsibility for enacting measures that give "reasonable assurance" that the firm's attorneys will abide by their ethical responsibilities.

Rule 5.1(a) promotes several goals of the Rules of Professional Conduct. First, by recognizing that senior attorneys have some responsibility for all the work done by their partners and subordinates, senior attorneys in charge are encouraged to construct mechanisms to prevent younger partners and associates from facing an ethical "sink or swim" office mentality. In these unhealthy situations, less experienced lawyers are left alone with little or no guidance from senior attorneys. Senior partners can either establish office procedures to assist new associates when they face ethical questions or they may face sanctions under this subsection. As a New Jersey Supreme Court Justice has noted: "It is not enough that the principals be available if needed. This sorry episode points up the need for a systematic, organized routine

for periodic review of a newly admitted attorney's files." *In re Barry,* 90 N.J. 286, 447 A.2d 923, 926 (1982)(Clifford, J., dissenting).

 Furthermore, the rule recognizes that "the ethical atmosphere of a firm can influence the conduct of all its members...." Rule 5.1 cmt. By placing some responsibility on the senior management of a firm, the rule prevents those attorneys who have the most influence over the atmosphere of the firm from turning a blind eye to the behavior of the firm's attorneys. While partners are not required to guarantee that other attorneys in their firm will not violate the Rules of Professional Conduct, ignoring their supervisory responsibilities can lead to sanctions for those running the firm.

Undoubtably, the supervision of attorneys by other attorneys in their firm is one of the most effective methods of preventing attorney misconduct. However, that supervision must be reasonably competent or it is meaningless and that failure in itself can encourage unethical behavior.[5] In situations where supervising attorneys fail to make reasonable efforts to ensure their subordinates follow the Rules of Professional Conduct, if the disciplinary proceedings only punished the individual attorney who committed the violation, the environment that fostered the attorney's unethical conduct would be allowed to continue.

When an attorney has allegedly violated Rule 5.1, it is not a complete defense to prove that the attorney did not know about the underlying misconduct. This Court looks to see if the attorney took reasonable measures in supervising the subordinate attorney. In fact, a complete lack of knowledge can lead to a finding of poor supervision if the subordinate's violation is such that reasonable supervision would have discovered it. However, Rule 5.1 does not mean that in every situation where an attorney in a firm violates the duties of professional responsibility other attorneys in the firm will find

---

5. Individual attorneys in a firm do not operate in an ethical vacuum. Studies have revealed that "an attorney's willingness to violate legal or professional rules depends heavily on the exposures to temptation, client pressures, *and collegial attitudes in his practice setting.*" Deborah Rhode, *Moral Character as a Professional Credential,* 94 Yale L.J. 491, 559 (1985)(emphasis added).

themselves sanctioned. In fact, partners in a law firm can implement many varied procedures and policies based on the size of the firm to effectively meet their responsibilities recognized by Rule 5.1 and therefore protect themselves from exposure under this provision.

## II. DEPOSITION CONDUCT

We take this opportunity to alert the bar to the enactment of Rule 30(j), SCRCP and to address attorney conduct in depositions in general so that attorneys in South Carolina will be aware of what actions can result in sanctions both by the trial court under the South Carolina Rules of Civil Procedure and by this Court under the Rules of Professional Conduct.

### A. New Rule 30(j), SCRCP

"A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." Rule 407, SCACR pmbl. In depositions attorneys may face the greatest conflict between their obligations to the court and opposing counsel under Rule 3.4,[6] and their obligations to their own client under Rule 1.3.[7] Since depositions almost always occur without direct judicial supervision, lawyers must regulate themselves during this highly critical stage of litigation. In the past, this Court has sanctioned attorneys who have failed to properly conduct themselves during depositions. *See Matter of Golden,* 329 S.C. 335, 496 S.E.2d 619 (1998). In addition to subjecting themselves to possible ethical sanctions, attorneys who engage in misconduct during depositions may find themselves sanctioned by the trial court as well. *See* Rule 37, SCRCP.

---

6. "A lawyer shall not:

 (a) Unlawfully obstruct another party's access to evidence . . .;

 . . .

 (d) In pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Rule 3.4, Rule 407, SCACR.

7. "A lawyer shall act with reasonable diligence and promptness in representing a client." Rule 1.3., Rule 407, SCACR. The comment to this rule states "A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."

 Rule 30(j), SCRCP, is nearly identical to the guidelines used in federal district court in South Carolina. The rule states:

### Conduct During Depositions

(1) At the beginning of each deposition, deposing counsel shall instruct the witness to ask deposing counsel, rather than the witness' own counsel, for clarifications, definitions, or explanations of any words, questions or documents presented during the course of the deposition. The witness shall abide by these instructions.

(2) All objections, except those which would be waived if not made at the deposition under Rule 32(d)(3), SCRCP, and those necessary to assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion pursuant to Rule 30(d), SCRCP, shall be preserved.

(3) Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege [8] or a limitation on evidence directed by the court or unless that counsel intends to present a motion under Rule 30(d), SCRCP. In addition, counsel shall have an affirmative duty to inform a witness that, unless such an objection is made, the question must be answered. Counsel directing that a witness not answer a question on those grounds or allowing a witness to refuse to answer a question on those grounds shall move the court for a protective order under Rule 26(c), SCRCP, or 30(d), SCRCP, within five business days of the suspension or termination of the deposition. Failure to timely file such a motion will constitute waiver of the objection, and the deposition may be reconvened.

(4) Counsel shall not make objections or statements which might suggest an answer to a witness. Counsel's objections shall be stated concisely and in a non-argumentative and non-suggestive manner, stating the basis of the objection and nothing more.

---

8. For purposes of this rule, the term "privilege" includes but is not limited to: attorney-client privilege; work product protection; trade secret protection and privileges based on the United States Constitution and the South Carolina Constitution.

(5) Counsel and a witness shall not engage in private, off-the-record conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order.

(6) Any conferences which occur pursuant to, or in violation of, section (5) of this rule are proper subjects for inquiry by deposing counsel to ascertain whether there has been any witness coaching and, if so, to what extent and nature.

(7) Any conferences which occur pursuant to, or in violation of, section (5) of this rule shall be noted on the record by the counsel who participated in the conference. The purpose and outcome of the conference shall be noted on the record.

(8) Deposing counsel shall provide to opposing counsel a copy of all documents shown to the witness during the deposition, either before the deposition begins or contemporaneously with the showing of each document to the witness. If the documents are provided (or otherwise identified) at least two business days before the deposition, then the witness and the witness' counsel do not have the right to discuss the documents privately before the witness answers questions about them. If the documents have not been so provided or identified, then counsel and the witness may have a reasonable amount of time to discuss the documents before the witness answers questions concerning the document.

(9) Violation of this rule may subject the violator to sanctions under Rule 37, SCRCP.

Our Rule 30(j), SCRCP, is derived from Judge Robert S. Gawthrop's seminal opinion in *Hall Clifton Precision*, 150 F.R.D. 525 (E.D.Pa.1993). Having adopted the *Hall* approach, our Court requires attorneys in South Carolina to operate under one of the most sweeping and comprehensive rules on deposition conduct in the nation.

### B. Off–the–Record Conferences

Rule 30(j), SCRCP, makes clear that a deposition's beginning signals the end of a witness's preparation. Once a deposition begins, an attorney and a client may have an off-the-record conference only when deciding whether to assert a

privilege or to discuss a previously undisclosed document. *See* Rule 30(j)(5), SCRCP; Rule 30(j)(8), SCRCP. Before beginning such a conference, the deponent's attorney should note for the record that a break is needed to discuss the possible assertion of a privilege or a newly produced document. After any such conference, the conferencing attorney should state on the record why the conference occurred and the decision reached. If the party decides to assert a privilege, the basis for the privilege should be clearly stated. Whether or not a privilege is asserted, deposing counsel may inquire on the record into the subject of the conference to determine if there has been any witness coaching. *See* Rule 30(j)(6), SCRCP. Conferences called to assist a client in framing an answer, to calm down a nervous client, or to interrupt the flow of a deposition are improper and warrant sanctions.

 Off-the-record conferences not specifically permitted by the rule are not allowed whether they are called by the deponent's attorney or the deponent. "There is simply no qualitative distinction between private conferences initiated by a lawyer and those initiated by a witness. Neither should occur." *Hall,* 150 F.R.D. at 528. According to our rule, even during breaks in the deposition such as a lunch or overnight break, witnesses and their counsel cannot talk substantively about prior or future testimony in the deposition. *See* Rule 30(j)(5), SCRCP.

## C. Suggestive Objections and Interjections

In order to prevent witness coaching during depositions, the rule prohibits lengthy "speaking" objections and brief suggestive interjections. As noted by Judge Gawthrop in *Hall,* the rules of evidence "contain no provision allowing lawyers to interrupt the trial testimony of a witness to make a statement. Such behavior should likewise be prohibited at depositions, since it tends to obstruct the taking of the witness's testimony." *Hall,* 150 F.R.D. at 530; *see also* Rule 30(c), SCRCP ("Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the South Carolina Rules of Evidence ...."). Therefore, interjections during a deposition by the witness's attorney such as "if you remember" and "don't speculate" are improper because they suggest to the witness how to answer the question.

Attorneys can easily make these admonitions to their client before the deposition begins. As summarized by Judge Gawthrop:

> The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness.

*Hall,* 150 F.R.D. at 528.

Rule 30(j)(1), SCRCP also directs the deponent to look to the attorney asking the question, not the witness's own counsel, for any clarifications or explanations. A witness's attorney cannot object to a question just because the attorney does not understand the question. *See Hall,* 150 F.R.D. at 530 n. 10. Furthermore, it is improper for counsel to state for the record their interpretations of questions, since such interpretations are completely irrelevant and improperly suggestive to the deponent. *Id.* A witness's attorney must also refrain from rephrasing questions for the witness.

## D. Instructions Not to Answer

New Rule 30(j), SCRCP, also limits when an attorney may advise a witness not to answer a question during a deposition. The only circumstances under which an attorney may instruct the witness not to answer a question in a deposition are: (1) when counsel has objected to the question on the ground that the answer is protected by a privilege; (2) when the information sought is protected by a limitation on evidence directed by the court; and (3) when the witness's counsel intends to present a motion under Rule 30(d), SCRCP (witness harassment). *See* Rule 30(j)(3), SCACR. The rule even requires attorneys to affirmatively direct their witnesses to answer a question unless they make one of these objections. *Id.*

On this point, instructing a witness not to respond to a question because it has been "asked and answered" will generally be improper. No rule prevents a deposing attorney from asking the same question more than one time or different variances of the same question. The witness's attorney can question the witness after the opponent's examination is done to clarify any confusion brought about by the witness's answers. An attorney may use the "asked and answered" objection without an instruction not to answer the question to establish a record of abuse where the attorney believes the questioning is approaching the level of harassment. If repetitive questioning reaches the point of harassment, the witness's attorney should make a motion under Rule 30(d), SCRCP.

### E. Handling Discovery Abuse in Depositions

"The primary objective of discovery is to ensure that lawsuits are decided by what the facts reveal, not by what facts are concealed." *In re Alford Chevrolet-Geo,* 997 S.W.2d 173, 180 (Tex.1999). The entire thrust of our discovery rules involves full and fair disclosure, to prevent a trial from becoming a guessing game or one of surprise for either party. *Samples v. Mitchell,* 329 S.C. 105, 495 S.E.2d 213 (Ct.App. 1997). In this respect, the discovery process is designed to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958).

Depositions are widely recognized as one of the "most powerful and productive" devices used in discovery. *See* A. Darby Dickerson, *The Law and Ethics of Civil Depositions,* 57 Md. L.Rev. 273, 277 (1998). Since depositions are so important in litigation, attorneys face great temptation to cross the limits of acceptable behavior in order to win the case at the expense of their ethical responsibilities to the court and their fellow attorneys. Claiming that any such improper behavior was merely "zealous advocacy" will not justify discovery abuse. When attorneys cross the line during a deposition, their actions do not promote the "just, speedy, and inexpensive determination of every action." *See* Rule 1, SCRCP.

Actions taken in a deposition designed to prevent justice, delay the process, or drive up costs are improper and warrant sanctions. In South Carolina, our judges have broad discretion in addressing misbehavior during depositions. *See* Rule 37, SCRCP. In addition to their traditional contempt powers, judges may issue orders as a sanction for improper deposition conduct: (1) specifying that designated facts be taken as established for purposes of the action; (2) precluding the introduction of certain evidence at trial; (3) striking out pleadings or parts thereof; (4) staying further proceedings pending the compliance with an order that has not been followed; (5) dismissing the action in full or in part; (6) entering default judgment on some or all the claims; or (7) an award of reasonable expenses, including attorney fees. *Id.* Among the costs a judge may deem appropriate could be those incurred for future judicial monitoring of depositions or payment for the retaking of depositions. Our judges must use their authority to make sure that abusive deposition tactics and other forms of discovery abuse do not succeed in their ultimate goal: achieving success through abuse of the discovery rules rather than by the rule of law.

TOAL, C.J., MOORE, WALLER, BURNETT, JJ., and Acting Justice C. VICTOR PYLE, Jr., concur.