635 S.E.2d 541

**Richard TEMPLE, Respondent/Appellant,**

v.

**TEC–FAB, INC., and Andrew Lytle, Appellants/Respondents.**

**No. 4139.**

Court of Appeals of South Carolina.

Submitted May 1, 2006.

Decided July 24, 2006.

Rehearing Denied Sept. 20, 2006.

384

J. Cameron Halford, of Fort Mill, for Appellants–Respondents.

William Thomas Moody, of York, for Respondent–Appellant.

WILLIAMS, J.:

Andrew Lytle and Tec–Fab, Inc., appeal a circuit court order awarding treble damages to Richard Temple for the withholding of wages in violation of the Payment of Wages Act. *See* S.C.Code Ann. §§ 41–10–10 to –110 (1986 & Supp. 2005). We reverse.[1]

## FACTS

In December 2000, Lytle sold Temple a fifteen percent interest in his business, Tec–Fab, Inc., for $15,000. Lytle also hired Temple to "run the shop and ... bring in some business." They agreed Tec–Fab would pay Temple $5,000 a month for his services. Seven months later, Temple's salary increased to $6,000 a month. In September 2002, Tec–Fab ceased paying Temple his agreed upon monthly salary.[2]

---

1. We decide this case without oral arguments pursuant to Rule 215, SCACR.

2. Temple alleges Tec–Fab did not pay him for September 2002, October 2002, and February 2003, and only partially paid him for December 2002.

In February 2003, Lytle terminated Temple because Tec–Fab lost money and accumulated debt during his employment. At that time, Lytle informed Temple he would receive back pay when Tec–Fab received its accounts from Accutron Technologies, Inc. (Accutron), a customer of Tec–Fab. Shortly thereafter, Accutron issued two checks, which were made jointly payable to Tec–Fab and Temple, for $7,000 and $8,390 respectively. Temple initially accepted personal delivery of these checks because he believed they reduced the amount in wages Tec–Fab owed him. He returned the checks to Accutron, however, after his attorney advised him to do so based on the continuing dispute between Temple and Lytle. Temple then told Accutron to reissue the checks to Tec–Fab only.

Temple sued Lytle and Tec–Fab for withholding his wages in violation of the Payment of Wages Act. *See* S.C.Code Ann. §§ 41–10–10 to –110 (Supp.2005). Lytle and Tec–Fab (collectively "Tec–Fab") answered and counterclaimed. Tec–Fab claimed Temple committed conversion when he failed to remit the Accutron checks to Tec–Fab. They also claimed Temple kept a Ford truck that belonged to Tec–Fab and $5,114.25 that Atlantic Scrap and Processing, L.L.C. (Atlantic Scrap), another customer of Tec–Fab, owed the company.

During discovery, Temple had trouble obtaining documents controlled by Tec–Fab. Temple eventually moved the circuit court to compel Tec–Fab to produce the requested documents, which the court granted. Although Tec–Fab produced some of the evidence in question, they waited until two days before trial to produce the bulk of the requested documents. Temple filed a motion in limine alleging an abuse of discovery and seeking sanctions against Tec–Fab. The circuit court granted Temple's motion and excluded these documents from consideration at trial.

After the trial, the circuit court awarded Temple back pay. The court concluded Respondents could not set-off the amount of the Accutron checks or the Ford truck against the amount in wages Tec–Fab owed Temple, because Temple did not keep the Accutron checks and Respondents permitted Temple to keep the Ford truck. However, the court decided Respondents could set-off the $5,114.25 Temple received from Atlantic Scrap against the amount in wages Tec–Fab owed Temple,

because Temple should have remitted the $5,114.25 to Respondents. In computing Temple's final damages, the trial court subtracted the amount Temple received from Atlantic Scrap and then trebled the remainder.

Tec–Fab moved the circuit court for judgment notwithstanding the verdict and a new trial. The court issued an amended order (1) reopening the trial to determine how much Temple kept from Atlantic Scrap, unless Temple consented to the $5,114.25 granted by the initial order; (2) holding the amount Tec–Fab owed Temple should be based on Temple's gross wages of $27,500 rather than his net wages of $18,117.50; (3) interpreting section 41–10–80(C) of the South Carolina Code (Supp.2005) to require an award of treble damages; and (4) awarding Temple attorney's fees and costs of $7,069.50. Tec–Fab appeals the circuit court's order awarding Temple treble damages under section 41–10–80(C), arguing the section does not require the trial court to treble damages. Temple also appeals the order, arguing the circuit court erred in trebling damages *after* offsetting the damages for money owed instead of trebling damages before the offset.

## SCOPE OF REVIEW

Statutory interpretation is a question of law. *S.C. Uninsured Employer's Fund v. House*, 360 S.C. 468, 470, 602 S.E.2d 81, 82 (Ct.App.2004). In an action at law, tried without a jury, the appellate court's standard of review extends only to the correction of errors of law. *Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C.*, 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct.App.2003). In such cases, the trial court's factual findings will not be disturbed unless they are wholly unsupported by the evidence or controlled by an erroneous conception of law. *Gordon v. Colonial Ins. Co. of California*, 342 S.C. 152, 155, 536 S.E.2d 376, 378 (Ct.App.2000).

## DISCUSSION

### I. The Trebling of Damages

Tec–Fab argues the trial court erred in interpreting section 41–10–80(C) of the South Carolina Code (Supp.2005) to require the trial court to treble damages when an employer

violates the Payment of Wages Act. S.C.Code Ann. §§ 41–10–10 to –110 (1986 & Supp.2005). We agree.

The Payment of Wages Act ("The Act") is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld. *Abraham v. Palmetto Unified Sch. Dist. No. 1,* 343 S.C. 36, 50, 538 S.E.2d 656, 664 (Ct.App.2000); *Dumas v. InfoSafe Corp.,* 320 S.C. 188, 194, 463 S.E.2d 641, 645 (Ct.App.1995). Section 41–10–40(C) of the South Carolina Code (Supp.2005) provides: "[a]n employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law. . . ." The Act requires that "[w]hen an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days." S.C.Code Ann. § 41–10–50 (Supp.2005). The Act further provides:

> In case of any failure to pay wages due to an employee as required by Section 41–10–40 or 41–10–50 the employee *may* recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.

S.C.Code Ann. § 41–10–80(C) (Supp.2005) (emphasis added).

In *Rice v. Multimedia, Inc.,* 318 S.C. 95, 99, 456 S.E.2d 381, 384 (1995), our supreme court interpreted section 41–10–80(C). The supreme court held that "by using 'may,' rather than 'shall,' the legislature has provided that the penalty is discretionary with the judge." *Id.* at 98, 456 S.E.2d at 383. The supreme court reasoned the legislature intended to give the trial court discretion to award treble damages because the "imposition of treble damages in those cases where there is a bona fide dispute would be unjust and harsh." *Id.*

In the present case, the trial court believed section 41–10–80(C) required it to treble damages. This is an error of law. The trial court may award treble damages in such cases, but nothing in section 41–10–80(C) mandates such. *Rice,* 318 S.C. at 99, 456 S.E.2d at 384. Furthermore, after a thorough review of the record on appeal, we conclude there was a bona

fide dispute over the wages in question. The trial court found Temple withheld over $5,000 in proceeds from company scrap sales to which he was not entitled. Accordingly, we find the trial court erred in trebling Temple's damages and modify Temple's award to $22,385.75 (Temple's gross unpaid wages less the $5,114.25 withheld in company proceeds).[3] The trial court's decision to treble Temple's damages is hereby reversed.

## II. Fiduciary Duty and Agency Relationship

■ Tec–Fab contends the trial court erred in not finding that an agency relationship continued to exist post-termination wherein Temple had a greater fiduciary duty to deposit the Accutron checks with Tec–Fab rather than returning them to Accutron. This issue is not preserved for our review as Tec–Fab did not raise it in its counterclaims or in its motion for a new trial. *See Cowburn v. Leventis*, 366 S.C. 20, 40–41, 619 S.E.2d 437, 448–49 (Ct.App.2005) (holding that when a trial court makes a general ruling on an issue, but does not address the specific argument raised by a party, that party must make a motion asking the trial court to rule on the issue in order to preserve it for appeal.).

## III. Piercing the Corporate Veil

■ Tec–Fab contends the trial court erred in its "de facto piercing" of the corporate veil to find Lytle personally liable to Temple. We disagree.

The Act defines employer as "every person, firm, partnership, association, corporation, receiver, or other officer of a court of this State, the State or any political subdivision thereof, and any agent or officer of the above classes employing any person in this State." S.C.Code Ann. § 41–10–10 (Supp.2005). Clearly, as an officer and agent of Tec–Fab with knowledge of the failure to pay Temple, and as the person

---

3. Due to our conclusion that the trial court erred in trebling Temple's damages, we need not address Temple's alleged error in trebling the damages after, rather than before, offsetting his awarded damages.

directly responsible for such non-payment, Lytle falls under the definition of "employer" as contemplated by the statute. The trial court was correct in finding Lytle personally liable for the non-payment of wages. The trial court did not have to reach the issue of piercing the corporate veil to do so.

## IV. Motion for a New Trial

■ Tec–Fab argues that the exclusion of evidence and the sanctions conferred constituted an error of law and should result in a new trial. We disagree.

■ Pursuant to Rule 37(b)(2)(C), SCRCP, when a party fails to obey an order to provide or permit discovery, the court may "make such orders in regard to the failure as are just," including an order dismissing the action or proceeding, or any part thereof. *See In re Anonymous Member of the S.C. Bar,* 346 S.C. 177, 194, 552 S.E.2d 10, 18 (2001) ("[j]udges must use their authority to make sure that abusive deposition tactics and other forms of discovery abuse do not succeed in their ultimate goal: achieving success through abuse of the discovery rules rather than by the rule of law."). The imposition of sanctions is generally entrusted to the sound discretion of the trial court. *Halverson v. Yawn,* 328 S.C. 618, 620–21, 493 S.E.2d 883, 884 (Ct.App.1997).

In the present case, discovery requests were served and, for months, were not answered. The trial court issued an Order Compelling Production, but Tec–Fab still did not provide the documents in question until the day before trial. Accordingly, we find the trial court did not abuse its discretion in imposing evidentiary sanctions for Tec–Fab's discovery violations.

For the reasons stated above, the trial court's order is

**AFFIRMED IN PART and REVERSED IN PART.**

KITTREDGE, J., and CURETON, A.J., concur.