715 S.E.2d 362

Aaron R. ALLEN, M.D., Respondent,

v.

PINNACLE HEALTHCARE SYSTEMS, LLC d/b/a Grand Strand Imaging and d/b/a Myrtle Beach Medical Center; Robert J. Gunn; David V. Vandergriff; Rick Joyce; and Timothy W. Gunn, Defendants,

of whom Robert J. Gunn, Rick Joyce, and Timothy W. Gunn are, Appellants.

No. 4855.

Court of Appeals of South Carolina.

Submitted April 1, 2011.

Decided July 27, 2011.

Susan P. MacDonald and Kathleen King, of Myrtle Beach, for Appellants.

James P. Stevens, Jr., of Loris, for Respondent.

SHORT, J.

Robert Gunn, Rick Joyce, and Timothy Gunn [1] (collectively, Appellants) appeal from the master's order finding them jointly and severally liable for Dr. Aaron Allen's unpaid wages, prejudgment interest, and statutory attorney's fees. Appellants argue the master erred in: (1) finding them personally liable to Allen under the South Carolina Payment of Wages Act (the Act); and (2) awarding damages to Allen. We affirm in part and reverse in part.[2]

## FACTS

Allen is a neurologist, who owned Atlantic Coastal Neuroscience Associates, LLC (Atlantic). Atlantic had offices in Lumberton, North Carolina, and Myrtle Beach, South Carolina. Appellants are former members of Pinnacle Healthcare Systems, LLC (Pinnacle), which was organized in North Carolina.[3] Pinnacle owned and operated Myrtle Beach Medical Center and Grand Strand Imaging. In June 2000, Allen, as the CEO of Atlantic, signed an employment contract (Contract) with Pinnacle. Pinnacle hired Allen to work as a physician and neurologist, and to be the Director of Professional and Specialty Services at Myrtle Beach Medical Center and Grand Strand Imaging. The terms of the Contract,

---

1. The original named defendants included: Pinnacle Health Care Systems, LLC d/b/a Grand Strand Imaging and d/b/a Myrtle Beach Medical Center; Robert J. Gunn; David V. Vandergriff; Rick Joyce; and Timothy W. Gunn. Pinnacle failed to answer Allen's complaint, was in default, and was defunct at the time of trial.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

3. Robert Gunn was the executive manager and owned forty percent of Pinnacle. Rick Joyce and Timothy Gunn were both members and owned twenty and fifteen percent of Pinnacle, respectively. Robert Gunn and Joyce testified they handled the finances and payroll for Pinnacle.

prepared by Pinnacle, provided that Pinnacle was hiring Allen for a term of five years, beginning June 26, 2000, and ending June 26, 2005. Pinnacle agreed to pay Allen a base salary of $1,500 per month, with additional compensation bonuses of $25,000 per month payable on the first and the fifteenth day of each month. Additionally, at the end of each month, Pinnacle agreed to pay Allen a bonus of sixty percent of collections to apply to all electrodiagnostic procedures or techniques performed, as well as other diagnostic procedures developed or used by Allen, less his regular salary. The Contract provided: "In the initial transitional portion of the contract while [Allen] is making arrangements to leave his Lumberton, North Carolina practice, his pay will be prorated to [$1,000] per day (minimum of 8 hours on the job each day)." The Contract was signed only by Allen and David Vandergriff, the operating manager of Pinnacle, on behalf of Pinnacle. Allen worked for Pinnacle until March 12, 2002.

Allen filed a complaint against Pinnacle, Vandergriff, and Appellants, alleging they failed to pay him wages in violation of the Act. Allen alleged Pinnacle owed him $780,000.[4] Allen's complaint also alleged breach of contract and sought injunctive relief. Allen additionally sought to pierce the corporate veil and the appointment of a receiver for Pinnacle.

By a consent order of reference, the parties agreed to refer the case to J. Stanton Cross, Jr., the Master–in–Equity for Horry County. A trial was held before Ralph P. Stroman on January 15, 2009.[5] During the trial, Allen elected to proceed solely on the claim pursuant to the Act. Appellants also made a motion for directed verdict during trial, which the master denied. The master filed his order on February 20, 2009, finding Appellants jointly and severally liable for Allen's un-

---

4. Allen testified he received his last payment from Pinnacle on September 18, 2001.

5. It is not clear from the record whether Ralph P. Stroman was acting as a Special Standing Referee for Horry County, as listed on the cover of the briefs and record on appeal, or if he was acting as Master–in–Equity for Horry County as he signed his February 20, 2009 Order, or if he was acting as the Interim Master–in–Equity as he signed his April 9, 2009 Order Denying Motions to Reconsider and to Alter or Amend Judgment. Therefore, for the purpose of this opinion, we refer to him as a Master–in–Equity.

paid wages, prejudgment interest, and statutory attorney's fees. Appellants filed a Rule 59(e), SCRCP, motion to reconsider, which the master denied on April 9, 2009, after a hearing on the matter. This appeal followed.

## STANDARD OF REVIEW

■■■ Actions for violation of the Act are actions at law. *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 307, 698 S.E.2d 773, 777 (2010). When reviewing an action at law, referred to a master or special referee for final judgment with direct appeal to the supreme court or the court of appeals, the appellate court's jurisdiction is limited to correcting errors of law, and the appellate court will not disturb the master or special referee's findings of fact as long as they are reasonably supported by the evidence. *Linda Mc Co. v. Shore*, 390 S.C. 543, 555, 703 S.E.2d 499, 505 (2010).

## LAW/ANALYSIS

### I. South Carolina Payment of Wages Act

■■■ Appellants argue the master erred in finding them personally liable to Allen under the Act. We disagree as to Appellants Robert Gunn and Rick Joyce, but agree as to Appellant Timothy Gunn.

The Act, found in sections 41–10–10 to –110 of the South Carolina Code (Supp.2010), defines "employer" as "every person, firm, partnership, association, corporation, receiver, or other officer of a court of this State, the State or any political subdivision thereof, and any agent or officer of the above classes employing any person in this State." S.C.Code Ann. § 41–10–10(1) (Supp.2010). The Act also defines "wages" as "all amounts . . . which are due to an employee under any . . . employment contract." S.C.Code Ann. § 41–10–10(2) (Supp. 2010). Section 41–10–30(A) provides that any changes in the "normal hours and wages agreed upon [and] the time and place of payment . . . must be made in writing at least seven calendar days before they become effective." S.C.Code Ann. § 41–10–30(A) (Supp.2010). Section 41–10–40 generally requires an employer to timely pay all wages due, and section 41–10–50 provides that when an employer discharges an em-

ployee, it must timely pay him all wages due. S.C.Code Ann.
§§ 41–10–40, 50 (Supp.2010).

In *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 195, 463 S.E.2d
641, 645 (Ct.App.1995), this court interpreted the Act, and
held the legislature intended to impose individual liability on
agents or officers of a corporation who knowingly permit their
corporation to violate the Act. "To hold otherwise would
require us to ignore the words 'and any agent or officer of the
above classes.'" *Id.* "[T]he South Carolina Payment of Wages
Act is remedial legislation designed to protect working people
and assist them in collecting compensation wrongfully with-
held." *Id.* at 194, 463 S.E.2d at 645.

Appellants argue Allen must prove they held more than a
mere membership or a management position in Pinnacle to
hold Appellants individually liable. Appellants cite to section
33–44–303(a) of the South Carolina Code, which provides "[a]
member or manager is not personally liable for a debt, obli-
gation, or liability of the company solely by reason of being or
acting as a member or manager" and maintain this applies to
Pinnacle. S.C.Code Ann. § 33–44–303(a) (2006). Appellants
assert that under *Temple v. Tec–Fab, Inc.*, 370 S.C. 383, 389,
635 S.E.2d 541, 544 (Ct.App.2006), *rev'd in part on other
grounds*, 381 S.C. 597, 675 S.E.2d 414 (2009), and *Dumas,* they
must have knowingly permitted Pinnacle to violate the Act to
be personally liable for paying wages that were withheld from
Allen, and no evidence exists that they knowingly permitted or
directed Pinnacle to violate the Act.

Additionally, Appellants claim that after they transferred
their interest in Pinnacle to Vandergriff on October 1, 2001,
they were no longer members of Pinnacle and no longer had
any authority to be involved with the company. Appellants
argue it is irrelevant that they signed the transfer of interest
to Vandergriff on December 21, 2001, because the document
said the transfer of ownership was to be effective as of
October 1, 2001. They assert that "express terms and provi-
sions in a contract as to time are effective and cannot be
ignored," and the effective date of a contract is the date the
contract becomes enforceable or otherwise takes effect, which
sometimes differs from the date on which it was enacted or
signed.

Appellants maintain that because they transferred their interest in Pinnacle on October 1, 2001 to Vandergriff, they were no longer responsible for the payment of Allen's wages. However, the "Transfer of Interest of Pinnacle HealthCare Systems, LLC" agreement was not signed and dated until December 21, 2001, and Vandergriff's answers to Allen's interrogatories confirmed the transfer of interest did not occur until December 21, 2001. Robert Gunn and Joyce also signed an "Asset Purchase Agreement" on October 25, 2001, selling Pinnacle to Grand Strand Imaging. The Asset Purchase Agreement states in paragraph 3(b) that Appellants "shall solely retain, pay, perform, defend, and discharge all[ ] liabilities and obligations of the Seller of every kind ... including, but not limited to, any duty to any employee to pay wages, compensation, or health, unemployment, or pension benefits ... of any kind. . . ." The Agreement also states in paragraph 11 that "Seller shall retain the sole liability, which Buyer does not assume, for all salaries, compensation, vacation time, sick time and other benefits accrued for the benefit of its employees prior to the Closing Date." Additionally, Joyce testified that after October 1, 2001, he had to submit financials to Southeastern Radiology, and file a corporate tax return for Pinnacle. Furthermore, on March 21, 2002, Robert Gunn signed and filed Pinnacle's Annual Report with the North Carolina Secretary of State.

In Vandergriff's answers to Allen's interrogatories, he states that until a few months prior to when Pinnacle was closed in February/March 2002, Robert Gunn or Timothy Gunn and Joyce "were in possession of almost all, if not all, of the books and records of [Pinnacle]'s practice." He further stated that Robert Gunn and Joyce may still have possession of these documents, including bank account records, payroll records for all employees, and state employment security commission forms for all employees. Vandergriff explained that when Appellants transferred ownership to him, they gave him "few, if any, corporate documents," and shortly after the transfer, the practice was closed because of a criminal investigation by the Drug Enforcement Agency.

Allen testified he received his last paycheck on September 18, 2001, and it was for his work in August 2001. He testified he then informed Robert Gunn, Joyce, and Vandergriff in late

2001 that he was not being paid his wages. Robert Gunn and Joyce testified they handled the finances and payroll for Pinnacle. They testified Allen never told them he was not being paid, but September 18, 2001 was the last date that all the employees were paid. They claimed they were not responsible for paying employees after that date. Robert Gunn testified he did not think anyone was still working at the company after they left. Allen testified none of the members told him the interest in Pinnacle had been transferred or that Robert Gunn and Joyce no longer had an interest in the company.

On March 19, 2002, Allen's attorney sent a letter to Pinnacle, formally demanding that Pinnacle pay his wages and other amounts pursuant to the Contract. Appellants objected to the introduction of the letter as hearsay, but did not deny having received it.[6] Robert Gunn testified he received the letter from Allen's attorney, and responded that Allen should direct his inquiries to Vandergriff because he was no longer a part of Pinnacle; however, Gunn did not present a copy of the letter he allegedly sent back to Allen, and he continued to pay the debts of Pinnacle for years after the transfer. Joyce also admitted he received the letter. Joyce testified he and Robert Gunn decided to leave the company because it was in financial trouble, but they never told the employees they were leaving or they might not be paid their wages. The Contract provided that if Allen was "terminated because of business reversals, change of venue, reorganization of the parent corporation, change of employment . . . then [sixty] days notice must be given and termination payment equal to [$240,000] for each remaining year of the contract." Although Pinnacle did not explicitly terminate Allen's employment, they effectively did so by ceasing to pay him for his work, and Pinnacle gave him no notification that the company was being sold or that he might not receive any more paychecks. Allen worked in excess of six months without being paid any wages, and he left in March 2002, after being constructively discharged.

The master's order concludes:

---

6. Although Appellants objected to the letter as hearsay, they did not object to Allen testifying as to the contents of the letter. The master admitted the letter subject to the objection, and allowed Allen to testify about what he remembered.

[I]t becomes obvious that [Appellants] had an obligation to advise the employees who were working and not getting paid that they may not get paid so they would not continue working without the payment of wages.... [I]t is inconceivable and incredible that [Appellants] did not know that [Allen] was not being paid his wages. In light of the fact that both R. Gunn and R. Joyce testified that they handled the finances and payroll of the LLC and that every two weeks R. Joyce got a list from Vandergriff as to who was to be paid on payroll, I find that [Appellants] knew that [Allen] was not getting paid and knowingly failed to pay [Allen] his wages in violation of [the Act].

We find the master's findings of fact are reasonably supported by the evidence, and the master did not err in finding Appellants Robert Gunn and Joyce are personally liable to Allen under the Act.

■ However, we find the master erred in finding Appellant Timothy Gunn personally liable to Allen. Timothy Gunn was listed as a member of Pinnacle and owned fifteen percent of the company. Appellants assert there was no evidence that he was an officer or agent of Pinnacle, that he was involved in the operation of the company, or that he had any knowledge or contact with Allen. The only testimony about Timothy's involvement in Pinnacle came from his brother, Robert Gunn, who testified Timothy invested $40,000 in Pinnacle, and "it was [his] way of trying to get [his], rise my brother up a little bit out of his station in life, see if this would help him." Therefore, without evidence that Timothy Gunn knowingly permitted Pinnacle to violate the Act, we cannot hold him liable simply because he was a member of Pinnacle.

■ Appellants also argue Allen was not an employee; thus, they were not personally liable for his wages. However, Appellants cite no law for this assertion. Therefore, we find Appellants abandoned this issue on appeal by failing to cite to any authority. *See* Rule 208(b)(1)(D), SCACR (requiring citation to authority in the argument section of an appellant's brief); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting when a party fails to cite authority or when the argument is simply a conclusory state-

ment, the party is deemed to have abandoned the issue on appeal).

## II. Damages

■ Appellants argue the master erred in awarding damages to Allen; however, this issue was not included in Appellant's sole statement of the issue on appeal. Therefore, we need not address this argument on the merits. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

## III. Attorney's Fees

■ Appellants also argue the award of attorney's fees to Allen was an abuse of discretion because the master failed to address the six factors set forth in *Baron Data Systems, Inc. v. Loter*, 297 S.C. 382, 377 S.E.2d 296 (1989).[7] Appellants argued the master erred in awarding attorney's fees in their motion to reconsider; however, they did not argue the award of attorney's fees to Allen was an abuse of discretion because the master failed to address the six factors set forth in *Baron Data Systems*. In their motion to reconsider, Appellants argued the award of attorney's fees against them was inappropriate because a dispute existed as to whether the individual members owed Allen any wages and they were no longer members of Pinnacle after October 1, 2001. We find this issue is not preserved for our review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Additionally, Appellants did not include this issue in their statement of issues on appeal. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point

---

7. In *Baron Data Systems*, our supreme court established six factors, none of which are controlling, that the court should consider in establishing reasonable attorney's fees: (1) the nature, extent and difficulty of the legal services rendered; (2) the time and labor necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar legal services; and (6) the beneficial results obtained. *Id.* at 384–85, 377 S.E.2d at 297.

will be considered which is not set forth in the statement of the issues on appeal."). Therefore, we find this issue is not preserved for our review.

## CONCLUSION

Accordingly, the master's order is

**AFFIRMED IN PART and REVERSED IN PART.**

HUFF, J., concurs.

PIEPER, J., concurs in part and dissents in part in a separate opinion.

PIEPER, J., concurring in part and dissenting in part.

I agree with the majority decision to affirm as to Robert Gunn and to reverse as to Timothy Gunn. However, I respectfully dissent as to Rick Joyce and would reverse the trial court's determination that Rick Joyce is personally liable under the South Carolina Payment of Wages Act (the Act) for wages owed to Aaron Allen.[8]

The Act mandates that "[e]very employer in the State shall pay all wages due . . . ." S.C.Code Ann. § 41–10–40(A) (Supp. 2010). The Act defines an "employer" as "every person, firm, partnership, association, corporation, receiver, or other officer of a court of this State, the State or any political subdivision thereof, and any agent or officer of the above classes employing any person in this State." S.C.Code Ann. § 41–10–10(1) (Supp.2010). An officer or agent of a company may be held personally liable under the Act when such person knowingly permits his or her company to violate the Act. *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 195, 463 S.E.2d 641, 645 (Ct.App. 1995).

In this case, Allen entered into an employment agreement with Pinnacle Healthcare Systems, LLC (Pinnacle), a manager-managed limited liability company organized by Robert Gunn. Rick Joyce was designated a member of Pinnacle and was involved in handling the company's payroll and finances.

---

8. I would also note that absent a finding of personal liability under the Act, Timothy Gunn and Rick Joyce are not liable to Allen for attorney's fees.

Although Joyce's involvement with the company's finances provided him knowledge that Pinnacle was violating the Act by not paying Allen's wages, as a member of the company, Joyce lacked the authority to make any decisions regarding the payment of wages. *See* S.C.Code Ann. § 33–44–404(b)(1), (2) (2006) ("[E]ach manager has equal rights in the management and conduct of the [manager-managed] company's business ... and any matter relating to the business of the company may be *exclusively* decided by the manager or, if there is more than one manager, by a majority of the managers ....") (emphasis added).

Joyce's lack of authority may be determined from the extent of his involvement with Pinnacle's finances. Each pay period, Joyce would receive a fax from Pinnacle's operating manager that designated who was to be paid and the amount of the payment. Joyce would then input the information from the fax into Pinnacle's system so a payroll service could issue payments. Although Joyce knew how much each employee was being paid, he lacked the authority to make any decisions regarding payroll. Accordingly, I would find Joyce was not "permitting" Pinnacle to violate the Act. *See Baisden v. CSC–Pa, Inc.,* No. 2:08–cv–01375, 2010 WL 3910193, at *7 (S.D.W.Va. October 1, 2010) (determining that a jury could find two corporate officers knowingly permitted a corporation to violate the Act because the officers "were actively involved in the day-to-day management of the corporation and regularly made determinations regarding the payment of wages and commissions"); *see also In re Kouzios,* No. 08–B–29463, 2011 WL 873410, at *1 (Bankr.N.D.Ill. March 11, 2011) (providing "the Illinois Wage Act makes officers and agents liable only if the officer or agent 'actively asserted substantial control over the management and financial affairs of the corporation' and 'knowingly permit[ted] the employer to violate [the Wage Act]' "). Furthermore, without the authority to act on behalf of Pinnacle, Joyce is not an "agent or officer" of the company. *See* S.C.Code Ann. § 33–44–301(b)(1) (2006) ("A member is not an agent of the company for the purpose of its business solely by reason of being a member."); S.C.Code Ann. § 33–44–101 cmt. (2006) ("In a manager-managed company agency authority is vested exclusively in one or more managers and not in the members."). Therefore, I would reverse the trial court on

this issue since Joyce was not an agent or officer who knowingly permitted Pinnacle's violation of the Act.