**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1943

CALVIN BARTON; SHAMIKA CURETON; LATOYA JAMISON; LISA JAMISON; TERRANCE JOHNSON; KELLY PARDUE; PAULINE WARREN; ANNA EDENS; ANTONIO MILLER; STACEY JOHNSON; SHERRY PERALTA; NATASHA ATKINSON; PAMELA VAUGHN; QUASHONDA CHAPMAN; SHIRLEY BAISEY; BILLY HARRIS; CONSTANCE NEAL,

          Plaintiffs - Appellees,

     and

JORGE CASTELLANOS; DENISE BLACKWELL; BRIAN BROWNLEE; JOSEPH HOPKINS; TERESA HARRIS,

          Plaintiffs,

     v.

HOUSE OF RAEFORD FARMS, INCORPORATED, d/b/a Columbia Farms, Incorporated,

          Defendant - Appellant.

No. 12-1945

SHIREN JOHNSON; SAMANTHA EARL,

          Plaintiffs - Appellees,

     and

TAWANA BLANDIN; TERESA CALIXTO; ELODIA CARRERA; ERNADID GARRIBO CASTILLO; LORENA CASTILLO CORRALE; NATALIE DORANTES; RUFFINA FELIPE; MARIA DOMINGO GOMEZ; SILVIA HERNANDEZ;

LUCIANO HERNANDEZ LEMOS; MATEO FRANCISCO LORENZO; ANGEL RODRIGUEZ,

Plaintiffs,

v.

HOUSE OF RAEFORD FARMS, INCORPORATED, d/b/a Columbia Farms, Incorporated,

Defendant - Appellant.

---

**No. 12-1946**

---

JACKIE BLAND; TAMORTHA BRUSTER; MYRTLE BRYSON; ANTONIO BURTS, a/k/a Antonio Burch; STEVEN CASE,

Plaintiffs - Appellees,

v.

HOUSE OF RAEFORD FARMS, INCORPORATED, d/b/a Columbia Farms, Incorporated,

Defendant - Appellant.

---

Appeals from the United States District Court for the District of South Carolina, at Greenville. J. Michelle Childs, District Judge. (6:09-cv-01901-JMC; 6:09-cv-03137-JMC; 6:10-cv-00928-JMC)

---

Argued: September 18, 2013          Decided: March 11, 2014

---

Before NIEMEYER, KING, and AGEE, Circuit Judges.

---

Affirmed in part; reversed in part by published opinion. Judge Niemeyer wrote the opinion, in which Judge Agee joined. Judge King wrote an opinion concurring in part and dissenting in part.

---

2

**ARGUED:** James Larry Stine, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, PC, Atlanta, Georgia, for Appellant. Nancy B. Bloodgood, FOSTER LAW FIRM, LLC, Daniel Island, South Carolina, for Appellees. **ON BRIEF:** Elizabeth K. Dorminey, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C., Atlanta, Georgia, for Appellant. Lucy C. Sanders, FOSTER LAW FIRM, LLC, Charleston, South Carolina, for Appellees.

---

NIEMEYER, Circuit Judge:

Numerous former employees and some current employees of House of Raeford Farms, Inc., d/b/a Columbia Farms, Inc., ("Columbia Farms"), a chicken processor in Greenville, South Carolina, commenced three separate actions against Columbia Farms, asserting two types of claims: first, for the payment of unpaid wages, withheld in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the South Carolina Payment of Wages Act ("S.C. Wages Act"), S.C. Code Ann. §§ 41-10-10 to -110, and second, for retaliating against them for instituting workers' compensation proceedings, in violation of S.C. Code Ann. § 41-1-80. The district court granted Columbia Farms' motion for summary judgment on the unpaid wages claims under the FLSA but denied it on the unpaid wages claims under the S.C. Wages Act and the retaliation claims. After the actions were consolidated, a jury returned a verdict in favor of 16 employees on the S.C. Wages Act claims, awarding them $16,583 in the aggregate, which the district court trebled to $49,749. The court also awarded attorneys' fees and costs on these claims in the amount of $227,640. Following a bench trial on the retaliation claims, the court found in favor of 8 employees, ordering that 5 be reinstated and awarding back pay in the aggregate amount of $131,742.

4

On Columbia Farms' appeal, we reverse the jury award on the S.C. Wages Act claims, concluding that those claims were preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and should have been dismissed. As to the retaliation claims under S.C. Code Ann. § 41-1-80, we reverse as to 6 employees because they failed to present evidence satisfying the governing legal standards for recovery under state law. As to the retaliation claims of the remaining two employees -- Billy Harris and Lisa Jamison -- we affirm.

I

S.C. Wages Act claims

The wages paid to the production and maintenance employees at Columbia Farms' plant in Greenville were governed by a collective bargaining agreement ("CBA") with the United Food and Commercial Workers' Union, Local No. 1996, CLC ("the Union"). Among other terms, the CBA provided that the basic work day was 8 hours and the basic work week was 40 hours, and it spelled out the hourly rates of pay for the different classes of employees. With respect to those rates, the CBA noted that in November 2004, Columbia Farms and the Union had negotiated a change to the company's "meal and rest policy" in exchange for a one-time 3.1% raise to the affected employees' hourly rate. Under the revised policy, instead of receiving "an unpaid lunch period and

5

paid breaks," employees were to receive one "unpaid meal period and [one] unpaid rest period per day, totaling approximately sixty (60) minutes, [with] the allocation between the meal and rest periods to be allocated by the Company." The CBA also specified that Columbia Farms would maintain "[a] daily record . . . with the use of adequate time clocks at each plant" and that "[t]he Union [would] have the right to examine time sheets and any other records pertaining to the computation of compensation of any employee whose pay [was] in dispute." Columbia Farms further agreed "not to enter into any other Agreement or contract with its employees, individually or collectively, which in any way conflict[ed] with the terms and provisions of this Agreement." Finally, the agreement established a grievance procedure with respect to any dispute "aris[ing] over the interpretation" of the CBA and provided for arbitration for any grievance that could not be settled.

The CBA did not expressly specify how employees' compensable time would be calculated, but Columbia Farms had a long-standing practice of paying its production employees based on "line time" -- that is, the time actually spent by employees processing chickens on the production line. "Line time" did not include time spent donning and doffing protective gear, walking to and from the production area, or washing gear before and after work. Columbia Farms stopped the production line for two

6

30-minute periods per shift to provide employees with meal breaks, which, under the CBA, were not counted as compensable time.

When new employees were hired, they were given a form at orientation entitled "Terms of Employment," which indicated that its purpose was to notify employees "of the terms of employment," as required by South Carolina Code § 41-10-30. The form was filled out to specify each worker's hourly rate of pay and, in a blank next to "hours of work," the general hours for that worker's scheduled shift -- for example, 9 a.m. to 6 p.m.

Columbia Farms also gave its new employees an Employee Handbook, which, in a section on "Time Card Administration," stated that "[t]he purpose of the time card is to insure an accurate record of all hours you work in order for you to receive correct payment of wages"; that "[y]ou are required to punch in and out on your own time card according to your schedule"; and that "[i]t is our policy that all work performed by you will be while you are 'on the clock.'" The Handbook further specified that "[y]ou must be dressed for work when punching in or out"; that "[e]mployees are to be at their workstations ready and dressed for work at their scheduled starting time and are to remain at their workstations until the scheduled quitting time"; and that "[y]ou will be paid for all time worked per your schedule." The Handbook also stated that

7

employees would receive two 30-minute lunch breaks during each shift.

According to a number of former employees who testified at trial, Columbia Farms never informed them when they were hired that their hours would be based on "line time," as distinct from "clock time." These employees stated that, instead, they were told at orientation that they would be working a set nine-hour shift and that they would be paid based on when they clocked in and out for that shift. Although some acknowledged that they were also told that their two 30-minute lunch breaks would be unpaid, they estimated that they ended up having only 10 to 20 minutes in the break room during each break because of the time it took to walk to and from the break room, to don and doff protective clothing, and to wash up.

In 2009, a group of the Greenville plant's former employees, as well as a few of its current employees, all of whom were members of the bargaining unit covered by the CBA, sued Columbia Farms for wages due, based on the FLSA and the S.C. Wages Act, asserting that they should have been paid for the time they spent donning and doffing protective gear and preparing for work. They also asserted that because their actual break time was less than 20 minutes, Columbia Farms was required, in accordance with federal regulations, to compensate them for that time. Their claims under the S.C. Wages Act

8

included allegations that Columbia Farms failed to notify them in writing as to the hours they would be working when they were hired.

The district court granted Columbia Farms' motion for summary judgment on the plaintiffs' FLSA claims, based on Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209 (4th Cir. 2009), which held that donning and doffing protective gear at a poultry processing plant constituted "changing clothes" within the meaning of 29 U.S.C. § 203(o) and that employers and unions could address whether such time would be compensated through collective bargaining. The district court in this case concluded that because Columbia Farms, like the employer in Sepulveda, had a long-standing practice under a bona fide collective bargaining agreement of paying its employees based on "line time," the plaintiffs were not entitled to compensation for the time spent donning and doffing protective gear. The court also granted Columbia Farms' motion for summary judgment on plaintiffs' similar claims under the S.C. Wages Act "[t]o the extent that those claims ar[o]se from Columbia Farms's failure to pay Plaintiffs for their time spent donning and doffing sanitary and protective gear." Atkinson v. House of Raeford Farms, Inc., No. 6:09-cv-01901-JMC, 2011 WL 1526605, at *5 (D.S.C. Apr. 20, 2011).

9

With respect to whether Columbia Farms had complied with the S.C. Wages Act in providing required written notices, giving adequate breaks, providing accurate pay statements, and paying full wages due when employees were terminated, the district court denied Columbia Farms' motion for summary judgment, concluding that "there appeared to be genuine issues of material fact regarding whether Columbia Farms complied with [the Act]." Atkinson, 2011 WL 1526605, at *5. Those claims, accordingly, were presented to a jury.

Before trial, Columbia Farms contended that the plaintiffs' S.C. Wages Act claims were preempted by § 301 of the LMRA, arguing that the plaintiffs' efforts to collect allegedly unpaid wages under the state statute necessarily implicated the CBA and therefore should have been dismissed. The district court rejected the argument, ruling that the plaintiffs could prevail on their S.C. Wages Act claims by proving (1) that they were not notified at the time of employment that they would be paid "line time" and were instead led to believe that they would be paid "clock time;" (2) that this understanding became part of the agreed-upon terms and conditions of their employment; and (3) that Columbia Farms had failed to honor this agreement and therefore owed them unpaid wages for the difference between "clock time" and "line time." The district court thus held that the S.C. Wages Act claims were not preempted because the

10

plaintiffs' theory of recovery did not depend on the meaning of the CBA but on the alleged breach of separate agreements to pay "clock time."

The jury returned a verdict in favor of 16 plaintiffs, awarding them unpaid wages ranging from $53 to $2,433, for a total of $16,583. And the district court trebled the damages, as authorized by state law, to $49,749, finding that no bona fide dispute existed regarding the wages the plaintiffs were due. The court explained:

> Columbia Farms had a practice of paying its employees according to line time; however, neither the CBA nor the terms of employment provided to Plaintiffs indicated that employees were to be paid according to line time. At trial, Plaintiffs presented evidence that Columbia Farms led them to believe that they would be paid based on the amount of hours that they were clocked-in at work. . . . Accordingly, to the extent the jury found that Columbia Farms did not pay all wages due to Plaintiffs, the court finds that no bona fide dispute existed as to the payment of those wages.

Atkinson v. House of Raeford Farms, Inc., No. 6:09-cv-01901-JMC, 2012 WL 2871747, at *3 (D.S.C. July 12, 2012). The court also awarded prejudgment interest, pursuant to S.C. Code Ann. § 34-31-20(A), and attorneys' fees and costs in the amount of $227,640.

Workers' compensation retaliation claims

A group of former employees also alleged that Columbia Farms had violated their rights under S.C. Code Ann. § 41-1-80,

11

which prohibits employers from retaliating against employees who have instituted workers' compensation proceedings.

Following a bench trial, the district court found in favor of eight employees, concluding that their employment had been terminated because they had instituted workers' compensation proceedings. Atkinson v. House of Raeford Farms, Inc., 874 F. Supp. 2d 456, 483 (D.S.C. 2012).

The court found that Columbia Farms carried out its retaliation in the context of a "point system" designed to enforce its attendance policy at its Greenville plant. Under the point system, employees who reached a total of five points were fired -- points were accumulated by the failure to follow the attendance policy and subtracted when an employee worked for 30 days without receiving any new points. Thus, employees who arrived late to work, returned to work late after a break, or left work early received half a point. Employees who missed work Tuesday through Friday received one point, and employees missing work Saturday through Monday received a point and a half. If an employee provided Columbia Farms with two days' notice and a medical excuse for an absence, the employee received no points. If an employee provided the medical excuse but not the required advanced notice, the employee received one point for the entire medically excused absence, even if it was longer than one day. But, as the district court noted, "[a]n

12

employee did not receive any points for workers' compensation injuries, absences, or approved doctor's visits when the employee visited the company doctor." Atkinson, 874 F. Supp. 2d at 462.

Teresa Taylor, Columbia Farms' plant nurse, was authorized to make the decision whether to send employees to the company doctor for medical treatment, and she did not do so when she thought their injuries required only first aid or were not work related. In this vein, Taylor concluded that an employee's overuse of her hands on the production line amounted to "sore hands," which were to be treated as a matter of first aid. Accordingly, for such complaints, she did not complete a workers' compensation form. While employees with workers' compensation injuries or restrictions received accommodation, such as light duty, employees "with injuries or restrictions that were not considered to be related to a workers' compensation injury were not permitted to return to work until the employee provided Columbia Farms with a doctor's note stating that the employee had no medical restrictions." Atkinson, 874 F. Supp. 2d at 463.

Trial testimony indicated that supervisors at the plant kept a list of employees who frequently visited the nurse's office or who went to a private doctor for medical care. For example, one shift manager testified that he had received lists

13

from the nurse's office with the names of employees who had worked less than 60 days and had been to the nurse's office multiple times.

Six of the plaintiffs -- Natasha Atkinson, Anna Edens, Shiren Johnson, Shirley Baisey, Tamortha Bruster, and Steven Case -- testified at trial that they had visited the nurse's station complaining of sore or injured hands and were given first aid treatment, such as gauze, topical pain reliever, ibuprofen, and hand massages. Five of the six had requested permission to visit the company doctor, but Taylor denied their requests. Instead, they visited private doctors or emergency rooms, receiving notes stating that they were unable to work for a specified period of time or that placed other restrictions on their ability to work. Taylor told several of these employees that they would not be allowed to return to work until they could provide a doctor's note saying that they could work without restrictions. When three of the employees -- Atkinson, Edens, and Johnson -- were unable to obtain such notes, their employment was terminated. The others -- Baisey, Bruster, and Case -- were given attendance points based on absences for which they had a doctor's note, and when those points were combined with other points that they had accumulated, their totals reached five points or more, leading to their discharge. The district court found that if Taylor had considered their

14

injuries to be work related and accordingly had allowed them to visit the company doctor, these employees would not have accumulated the final points that caused their discharge.

The two other prevailing plaintiffs -- Billy Harris and Lisa Jamison -- sustained workplace injuries that Columbia Farms acknowledged as such. Harris fell down the stairs while at work and injured his back, and Jamison slipped and fell at work, injuring her back, hip, neck, and shoulder. Both were seen by the company doctor.

The doctor placed Harris on light duty for several weeks, and Columbia Farms made an accommodation for this restriction, giving Harris different job responsibilities. The doctor eventually released Harris to full duty, but told him to visit the nurse's station if his back began to hurt. While working on the production line, Harris began experiencing pain and so told his supervisor. The district court credited Harris's testimony that he eventually received his supervisor's permission to leave the line to visit the nurse's station. When he reached the nurse's station, however, the plant's human resources manager was waiting for him and told him that he was being fired for leaving the line without permission. After he was fired, Harris continued receiving treatment from the company doctor, and an MRI showed that he had a bulging disc. Harris acknowledged that from the time of his discharge in July 2009 until at least

15

February 2010, he could not have performed his normal job at Columbia Farms due to medical restrictions given to him by the company doctor.

Similarly, Columbia Farms' doctor placed Jamison on light duty after her fall at work in May 2009. She testified that "a supervisor at Columbia Farms told her that Taylor was going to get her fired because of her injury." Atkinson, 874 F. Supp. 2d at 471. Jamison submitted notes from the company doctor setting forth her work restrictions and advising that she take frequent breaks from the use of her shoulder, which she understood to mean that she should walk around to loosen up her shoulder or go to the nurse's station when she began having pain. In Jamison's presence, Taylor called the company doctor to verify that Jamison could take breaks as needed.

A few weeks after Jamison filed a workers' compensation claim, the human resources manager found Jamison outside her assigned work area on three occasions and fired her, stating that she had taken excessive breaks. The district court credited Jamison's testimony that each time the human resources manager saw her, she was on her way back from the nurse's station. After her discharge, Jamison began collecting social security payments for a disability unrelated to her work at Columbia Farms. At trial in November 2011, however, Jamison

16

testified that she had been physically able to go back to her old job at Columbia Farms for approximately nine months.

Based on the factual circumstances presented, the district court concluded that Columbia Farms violated S.C. Code Ann. § 41-1-80 (prohibiting employers from discharging or demoting employees who have in good faith "instituted" a "proceeding under the South Carolina Workers' Compensation Law"). To determine whether the plaintiffs had "instituted" a workers' compensation proceeding, the court applied the following test:

> [W]hile the mere seeking and receiving of medical treatment is not sufficient to constitute the institution of a workers' compensation claim, an employee's seeking or receiving of medical treatment from the employer accompanied by circumstances which would lead the employer to infer that a workers' compensation claim is likely to be filed is sufficient to institute a workers' compensation proceeding for the purposes of Section 41-1-80.

Atkinson, 874 F. Supp. 2d at 475. As to Atkinson, Edens, Johnson, Baisey, Bruster, and Case, the court found that their "receipt of treatment for their injuries from the nurse's office, combined with their requests to visit the company doctor or Taylor's representation to them that they had to see a private doctor, and their submission of documentation to Columbia Farms showing that they had sought medical care for their injuries [was] sufficient to constitute the institution of workers' compensation proceedings." Id. at 477 (emphasis added); see also id. at 478-80.

17

As to the plaintiffs' burden to prove a causal connection between their institution of a workers' compensation proceeding and the termination of their employment, the court concluded that eight plaintiffs had also satisfied this element of their case, explaining:

> Section 41-1-80 does not provide an employee with the right to a reasonable period of time to rehabilitate from an injury and demonstrate the ability to perform his job duties. However, where an employer sets forth the employee's inability to perform his job duties as the employer's reason for terminating the employee, evidence that the employer had a policy of accommodating employees with workers' compensation injuries, coupled with the employers' failure to accommodate the plaintiff may support that plaintiff's assertion that the employer's proffered reason for termination was mere pretext.

Atkinson, 874 F. Supp. 2d at 476. The court relied on this principle in finding that these plaintiffs had established the requisite causal connection between the termination of their employment and their institution of workers' compensation proceedings, rejecting as mere pretext Columbia Farms' explanation based on application of its attendance policy.

The district court ordered reinstatement as to each of the five prevailing plaintiffs who had sought it -- Atkinson, Edens, Johnson, Baisey, and Jamison. It found that Johnson and Jamison had failed to mitigate their damages and therefore were not entitled to back wages, but with respect to the remaining

18

prevailing plaintiffs, the court awarded damages ranging from $1,076 to $55,331, for a total of $131,742.

II

Columbia Farms contends first that the plaintiffs' claims under the S.C. Wages Act were preempted by § 301 of the LMRA and should have been dismissed. It argues that the state statute provides for an enforcement mechanism designed to ensure that employees timely receive all the wages to which they are entitled under an employment contract. As such, it contends, the plaintiffs' entitlement to unpaid wages necessarily turned on the application and construction of the CBA, which established the terms and conditions of the plaintiffs' employment at the plant through both its express terms and the custom and practice that developed under it. Columbia Farms argues that instead of recognizing that the S.C. Wages Act claims for unpaid wages were preempted, the district court improperly allowed the jury to find that the plaintiffs entered into separate agreements with Columbia Farms as to the manner by which their compensable time would be calculated, even though the CBA explicitly prohibited such side agreements.

The plaintiffs contend that, rather than being preempted under § 301 of the LMRA, the S.C. Wages Act provides remedies for when an employer "fail[s] to inform [e]mployees in writing

19

at the time of hire how much they would be paid and what hours they were required to work." In other words, they maintain that the S.C. Wages Act is a "notice statute" and that all Columbia Farms "had to do to comply with the [Act] when it hired Employees was to indicate in writing that employees were paid based on 'line time.'" Because Columbia Farms failed to do that and instead informed new employees that they would be paid based on when they clocked in and out, the plaintiffs argue that they were entitled under the state statute to recover the difference in their wages between "line time" and "clock time," regardless of what the CBA actually provided or the long-standing custom and practice at the plant had been. They thus argue that their S.C. Wages Act claims did not depend on the CBA and were therefore not preempted.

The S.C. Wages Act was designed to "protect employees from the unjustified and wilful retention of wages by the employer." Rice v. Multimedia, Inc., 456 S.E.2d 381, 383 (S.C. 1995). The Act provides employees in South Carolina with a cause of action to recover for an employer's "failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50." S.C. Code Ann. § 41-10-80(C). In turn, § 41-10-40 directs South Carolina employers to timely pay their employees "all wages due," and § 41-10-50 similarly provides that when a South Carolina employer discharges an employee, it must timely pay

20

that employee "all wages due." See also Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 781 (S.C. 2010). The S.C. Wages Act defines the term "wages" as "all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract." S.C. Code Ann. § 41-10-10(2) (emphasis added); see also Allen v. Pinnacle Healthcare Sys., LLC, 715 S.E.2d 362, 365 (S.C. Ct. App. 2011) ("The Act also defines 'wages' as 'all amounts . . . which are due to an employee under any . . . employment contract'" (omissions in original) (quoting S.C. Code Ann. § 41-10-10(2))).

In essence, the plaintiffs' cause of action under S.C. Code Ann. § 41-10-80(C) is based on their claim that Columbia Farms owed them unpaid wages resulting from its failure to count their hours in accordance with employment contracts that were based on what Columbia Farms told them when they were hired and that stood separate and apart from the CBA. We conclude, however, that such a theory of recovery cannot support their claims because of the CBA's terms and the supremacy of federal law that provides for the CBA's enforcement.

Any wages owed to the plaintiffs in this case were necessarily those agreed to in the CBA negotiated between the

21

Union and Columbia Farms. That is the only contract on which their S.C. Wages Act claims can be based, inasmuch as the CBA provides that it was to be the exclusive contract of employment, with Columbia Farms specifically agreeing with the Union that it would not "enter into any other Agreement or contract with its employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement." And the CBA's terms were binding on the plaintiffs as members of the bargaining unit.

As to wages, the parties agreed in the CBA to an 8-hour day and a 40-hour week as the "basic" work day and work week and to a specified rate of pay per hour "for all hours worked." Also, as the district court recognized, the company and its employees had operated for years under a custom and practice of the CBA that the "hours worked" be calculated based on "line time." The CBA also provided for two unpaid breaks during a work day, totaling approximately 60 minutes, "the allocation between the meal and rest periods to be allocated by the Company." Moreover, should any employee have a dispute "aris[ing] over the interpretation" of those provisions, he or she was required to follow the specified grievance procedure and, ultimately, the arbitration procedure.

It is therefore apparent that the plaintiffs' claims under the S.C. Wages Act are nothing other than a disagreement with

22

Columbia Farms' interpretation of how to calculate their "hours worked" under the CBA, including the two unpaid breaks provided for in the CBA. The company asserts that compensable time was properly measured based on "line time," so that employees would start being paid when the line commenced and would no longer be paid when the line stopped, either for breaks or at the end of the shift. The plaintiffs assert that compensable time was to be measured generally by when they were "on the clock" and, as to the breaks, when they were in the break room after having taken off their protective gear and washed up. While both sides have looked to a range of evidence to resolve the dispute -- e.g., the representations at orientation, the Employee Handbook, and the practices followed -- the question at bottom remains what the CBA intended. For this reason, we conclude that the dispute under the S.C. Wages Act necessarily implicates an interpretation of the CBA and therefore that the proceedings are preempted by § 301 of the LMRA.

Section 301 of the LMRA provides that "suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). This provision "not only provides federal courts with jurisdiction over employment disputes covered by collective bargaining agreements, but also directs federal

23

courts to fashion a body of federal common law to resolve such disputes." McCormick v. AT&T Tech., Inc., 934 F.2d 531, 534 (4th Cir. 1991) (en banc). Moreover, to ensure uniform interpretation of collective bargaining agreements and to protect the power of arbitrators, the Supreme Court has found that § 301 preempts and entirely displaces "any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983) (emphasis added) (internal quotation marks and citation omitted). As a result, a plaintiff may not rely on state law "as an independent source of private rights to enforce collective bargaining contracts." Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (internal quotation marks and citation omitted). Not only does this mean that a plaintiff may not pursue a state law breach of contract claim to enforce a collective bargaining agreement, but it also means that a plaintiff may not "evade the requirements of § 301" through artful pleading. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). Accordingly, when resolution of a state law claim depends substantially on the analysis of a collective bargaining agreement's terms, it must either be treated as a claim under § 301, subject to dismissal if the collective bargaining agreement's grievance and arbitration procedures have not been followed, or alternatively be dismissed as preempted by

24

§ 301. Id. at 220-21; see also Davis v. Bell Atl.-W. Va., Inc., 110 F.3d 245, 247 (4th Cir. 1997).

To be sure, the Supreme Court has pointed out that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). And "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 124. But when the evaluation of the state law claim "is inextricably intertwined with consideration of the terms of the labor contract," Allis-Chalmers, 471 U.S. at 213, such that it is necessary to interpret the collective bargaining agreement to resolve the claim, Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409-10 (1988), the claim is preempted under § 301. Accordingly, "it is the legal character of a claim, as independent of rights under the collective-bargaining agreement (and not whether a grievance arising from precisely the same set of facts could be pursued) that decides whether a state cause of action may go forward." Livadas, 512 U.S. at 123-24 (internal quotation marks and citations omitted).

In this case, the plaintiffs cannot claim independent state contract rights because the wages that they claim are due were

25

addressed by the CBA, which provided further that it was the exclusive contract governing the wages to be paid by Columbia Farms to the members of the bargaining unit. At a more particular level, this case is nothing more than a suit for the collection of wages based on whether "hours worked," as that term is used in the CBA, should be computed based on "line time" or "clock time." Accordingly, we hold that the plaintiffs' claims under the S.C. Wages Act are preempted by § 301 of the LMRA and should not have been submitted to the jury.

The plaintiffs seek to avoid this conclusion by disavowing reliance on the collective bargaining agreement and asserting that their claims are based on a notice provision of the S.C. Wages Act, which provides that "[e]very employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs." S.C. Code Ann. § 41-10-30(A). The plaintiffs argue that Columbia Farms violated this provision when it failed "to indicate in writing that employees were paid based on 'line time.'"

First, it is far from clear whether § 41-10-30(A) required Columbia Farms to provide written notice to its employees that their "normal hours" would be measured based on "line time." See Carolina Alliance for Fair Emp't v. S.C. Dep't of Labor,

26

Licensing & Regulation, 523 S.E.2d 795, 802 (S.C. Ct. App. 1999) (rejecting plaintiffs' position that "the exact amount of the employee's wages must be disclosed" under the Act). Nonetheless, reading § 41-10-30(A) as plaintiffs would have it would still not provide the plaintiffs with a remedy, as the S.C. Wages Act specifies that the remedy for an employer's violation of § 41-10-30 is "a written warning by the Director of the Department of Labor, Licensing, and Regulation or his designee for the first offense and . . . a civil penalty of not more than one hundred dollars for each subsequent offense." S.C. Code Ann. § 41-10-80(A).

In an effort to avoid this barrier, the plaintiffs argue that the notice provision in § 41-10-30(A) is incorporated into the provision imposing a duty on employers to timely pay their employees "all wages due," § 41-10-40(D), for which there is a private cause of action, § 41-10-80(C). Section 41-10-40(D) provides that "[e]very employer in the State shall pay all wages due at the time and place designated as required by subsection (A) of § 41-10-30," and the plaintiffs take this cross reference to mean that the "wages due" to an employee are whatever wages the employer notified the employee he would be receiving at the time of hire. Based on this interpretation, they maintain that because Columbia Farms told them "they would be paid by the clock at the time of hire and would work nine (9) hour shifts,"

27

Columbia Farms somehow created a term of employment that it breached by paying them based on "line time." They maintain that their claim to unpaid wages is therefore not preempted because "[n]o resort to any CBA was necessary for the jury to determine Employees were not told that they would be paid based on 'line time' when they were hired."

Several problems are inherent with this theory. First, as a textual matter, the far more natural reading of § 41-10-40(D) is that it references § 41-10-30(A) to describe when and where wages are to be paid, not the amount of wages due to an employee. In other words, § 41-10-30(A) requires employers to notify their employees of "the time and place of payment," and § 41-10-40(D) then uses that "time and place" designation to establish when and where wages must be paid. See Ross v. Ligand Pharm., Inc., 639 S.E.2d 460, 471 (S.C. Ct. App. 2006).

But far more fundamentally, the plaintiffs' theory ultimately undermines the role of the CBA as the exclusive contract for the payment of wages. They argued to the jury that even though they were hired into positions covered by the CBA, they nonetheless also entered into individual employment contracts with Columbia Farms when they were hired that were independent of the CBA and that entitled them to be paid on a "clock time" basis, regardless of what the CBA provided. This approach, however, cannot be accepted without doing serious

28

damage to the system of collective bargaining because, at bottom, the plaintiffs seek to displace the CBA that established the terms and conditions of their employment and to replace it with what they understood to be Columbia Farms' individual agreements that compensable hours would be calculated based solely on when they clocked in and out of work. Obviously, this theory would inappropriately usurp the CBA's federally protected role. See Caterpillar Inc., 482 U.S. at 396 (noting that "[i]ndividual contracts cannot subtract from collective ones" (quoting J.I. Case Co. v. NLRB, 321 U.S. 332, 339 (1944)) (internal quotation marks omitted)); see also, e.g., Fox v. Parker Hannifin Corp., 914 F.2d 795, 801 (6th Cir. 1990) ("[E]mployees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims"); Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1286 (9th Cir. 1989) ("Since Chmiel's independent contract claim concerns a job position governed by the collective bargaining agreement, it is completely preempted by section 301"); Darden v. U.S. Steel Corp., 830 F.2d 1116, 1120 (11th Cir. 1987) (per curiam) (holding preempted plaintiffs' claims "that they entered into oral agreements, for unionized positions, that clearly sought to limit or condition the provisions of the collective bargaining agreement, which established the terms and conditions of employment"). Indeed,

the plaintiffs' approach would undermine one of the fundamental goals of § 301 preemption by allowing employees covered by a collective bargaining agreement to circumvent their arbitration commitments by positing the existence of individual contracts that cover the same ground as a collective one but lack an arbitration provision. Moreover, the plaintiffs' theory in this case cannot be reconciled with the provision of the CBA in which Columbia Farms agreed "not to enter into any other Agreement or contract with its employees, individually or collectively, which in any way conflicts with the terms and provisions of [the CBA]."

In sum, we conclude that any entitlement the plaintiffs have in this case to unpaid wages under the S.C. Wages Act must stem from the CBA that governed the terms and conditions of their employment, including their wages. Since it is undisputed that the plaintiffs did not pursue the grievance and arbitration procedures provided by the CBA, these claims should have been dismissed as preempted by § 301 of the LMRA.

III

With respect to the district court's decision, following a bench trial, that Columbia Farms violated the rights of eight of its former employees under S.C. Code Ann. § 41-1-80 by terminating their employment in retaliation for their

30

institution of workers' compensation proceedings, Columbia Farms contends that the district court applied an unprecedented test for when an employee "institutes" workers' compensation proceedings. It also contends that the district court erred in finding a causal relationship between Columbia Farms' termination of the plaintiffs' employment and their "institution" of workers' compensation proceedings.

Section 41-1-80 of the South Carolina Code provides that "[n]o employer may discharge or demote any employee <u>because the</u> <u>employee has instituted</u> or caused to be instituted, in good faith, <u>any proceeding</u> under the South Carolina Workers' Compensation Law." (Emphasis added).

With respect to Natasha Atkinson, Anna Edens, Shiren Johnson, Shirley Baisey, Tamortha Bruster, and Steven Case, none actually filed a workers' compensation claim prior to the termination of his or her employment. The district court found, however, that they had "instituted" workers' compensation proceedings within the meaning of the statute based on their "receipt of treatment for their injuries from the nurse's office, combined with their requests to visit the company doctor or Taylor's representation to them that they had to see a private doctor, and their submission of documentation to Columbia Farms showing that they had sought medical care for their injuries." <u>Atkinson</u>, 874 F. Supp. 2d at 477; <u>see also</u> <u>id.</u>

31

at 478-480. This conclusion, however, applied a test that is insufficient under South Carolina law to show that workers' compensation proceedings had been "instituted."

To be sure, the South Carolina Supreme Court has indicated that § 41-1-80 does not "require a formal filing of a Workers' Compensation Claim by the employee," reasoning that "[t]he purpose of this statute cannot be avoided by firing an injured employee before he or she files a claim." Johnson v. J.P. Stevens & Co., Inc., 417 S.E.2d 527, 529 (S.C. 1992). Pointing to decisions in other jurisdictions that had "held other conduct sufficient to have instituted a proceeding including [1] the employer's agreement to pay or payment of medical care or [2] the employer's receipt of written notice from an independent health care provider in the form of a bill for medical services rendered to an injured employee," the South Carolina Supreme Court held that "these types of conduct will suffice to constitute instituting a proceeding under our statute as well." Id. (emphasis added). The South Carolina Supreme Court has, however, never recognized any other conduct as sufficient to satisfy the statutory requirement.

The district court in this case failed to follow the jurisprudence of the South Carolina Supreme Court and did not require plaintiffs to show either (1) that Columbia Farms agreed to pay for the plaintiffs' medical care or (2) that Columbia

32

Farms received a bill for the plaintiffs' care from an independent health care provider. And the circumstances of these six employees do not satisfy those requirements. The district court relied on the fact that these six employees had submitted documentation to Columbia Farms to show that they had sought medical care for their injuries, but there was no indication, direct or implied, that they were doing so in order to seek reimbursement for their medical bills. To the contrary, the evidence showed that the plaintiffs provided doctors' notes to Columbia Farms in their efforts to minimize their attendance points. We therefore conclude that the district court erred in holding that these six employees had "instituted" workers' compensation proceedings within the meaning of S.C. Code Ann. § 41-1-80.

We also agree with Columbia Farms that the district court erred in concluding that the termination of these plaintiffs' employment resulted from their institution of workers' compensation proceedings. The record showed that their employment was terminated under the established point system, and regardless of whether that system was fairly administered, the plaintiffs did not establish that it was a mechanism for retaliation for their institution of workers' compensation proceedings. To the contrary, the district court found that the

33

plaintiffs' employment was terminated by reason of Nurse Taylor's erroneous classification of their injuries.

Again, the statute provides that "[n]o employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law." S.C. Code Ann. § 41-1-80 (emphasis added). It specifies further:

> Any employer shall have as an affirmative defense to this section the following: wilful or habitual tardiness or absence from work; being disorderly or intoxicated while at work; destruction of any of the employer's property; failure to meet established employer work standards; malingering; embezzlement or larceny of the employer's property; violating specific written company policy for which the action is a stated remedy of the violation.

Id. (emphasis added). Interpreting these provisions, the South Carolina Supreme Court has held that "[t]he appropriate test of causation under § 41-1-80 is the 'determinative factor' test," which "requires the employee [to] establish that he would not have been discharged 'but for' the filing of the workers' compensation claim." Hinton v. Designer Ensembles, Inc., 540 S.E.2d 94, 97 (S.C. 2000). The South Carolina Supreme Court has further held that "[w]hile the employer has the burden of proving its affirmative defenses, the employer does not have the burden of establishing the affirmative defenses are causally related to the discharge," id., because such a requirement would

34

"effectively shift[] the burden to [the] employer to _disprove_ that the discharge was in retaliation for filing the claim," Wallace v. Milliken & Co., 406 S.E.2d 358, 360 (S.C. 1991). Instead, "[t]he ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains _at all times with the employee_." Id. (quoting Buckner v. Gen. Motors Corp., 760 P.2d 803, 807 (Okla. 1988)). The employee may carry the burden, "either directly by persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (citation omitted). "If the employer articulates a legitimate, nonretaliatory reason for the termination, the proximity in time between the work-related injury and the termination is not sufficient evidence to carry the employee's burden of proving a causal connection." Hinton, 540 S.E.2d at 97.

The district court did not adhere to these principles in resolving the retaliation claims brought by the six plaintiffs who reported having sore or injured hands. It erred by failing to hold these plaintiffs to their burden of proving that they "would not have been discharged 'but for' the filing of the workers' compensation claim." Hinton, 540 S.E.2d at 97. Instead, it concluded that they had established the requisite

35

causal connection by showing that they would not have been fired "but for" Nurse Taylor's determination that their conditions were not related to work. See, e.g., Atkinson, 874 F. Supp. 2d at 478 ("But for Taylor's refusal to allow Baisey to visit the company doctor, Baisey would not have accumulated excessive attendance points"). It could be argued, as the district court suggested, that Nurse Taylor may have misclassified these employees' injuries, resulting in their failing to receive the benefit of Columbia Farms' more lenient policies for employees with injuries it considered to be work related. But, without more, this fails to establish that Columbia Farms discharged these six individuals in retaliation <u>for the exercise of their statutory rights under South Carolina's workers' compensation law</u>.

Because the district court (1) applied the wrong test under South Carolina law for determining whether the plaintiffs "instituted proceedings" under § 41-1-80 and (2) failed to demand proof sufficient to satisfy South Carolina's test for causation, we reverse the judgments in favor of Atkinson, Edens, Johnson, Baisey, Bruster, and Case.

The retaliation claims brought by Billy Harris and Lisa Jamison stand on a different footing. Both of these employees fell at work and were treated by the company doctor. The district court thus properly concluded that they had

36

"instituted" workers' compensation proceedings within the meaning of the statute prior to their discharge. See Johnson, 417 S.E.2d at 529. Indeed, Jamison actually filed a workers' compensation claim prior to the termination of her employment, although the district court did not rely on this fact. Moreover, even though Columbia Farms proffered a nonretaliatory reason for why it terminated Harris' employment -- that he left the line without permission -- the district court was entitled to accept Harris's account that he actually had received permission to leave the line in order to visit the nurse's station. Similarly, Columbia Farms represented that it was terminating Jamison's employment because she had taken excessive breaks. But again, the district court found that that explanation lacked credence since the company doctor had advised Jamison to take frequent breaks and she was returning from the nurse's station each time she was spotted outside of her work area. The district court was also entitled to consider persuasive "the fact that a supervisor at Columbia Farms [had] indicated that Jamison would likely be terminated as a result of her injury." Atkinson, 874 F. Supp. 2d at 481-82.

Columbia Farms nonetheless challenges the judgments in favor of these two plaintiffs, arguing that an extended period of time would have elapsed before they would have been able to perform their normal job duties, thus justifying their

discharge. There is some force to this position, as the statute does specify that an employer "shall have as an affirmative defense" an employee's "failure to meet established employer work standards." S.C. Code § 41-1-80; see also Horn v. Davis Elec. Constructors, Inc., 416 S.E.2d 634, 637 (S.C. 1992) (holding that § 41-1-80 "does not singularly accord to an employee the right to a reasonable period of time for rehabilitation to demonstrate the ability to perform his former employment"). But in Horn, the court also affirmed the judgment entered in favor of an employee, even though the record showed that he was totally disabled for almost a year as a result of an on-the-job injury to his back and then only released to return to work with restrictions that prevented him from performing his former job. Id. at 634-35. We conclude that this decision controls Columbia Farms' argument. We also note, in this regard, that the district court specifically found that Jamison was not entitled to any lost wages on the ground that she had failed to mitigate her damages after her discharge, and it awarded lost wages to Harris only after finding that he "had been on light duty before the company doctor released him to return to full duty, and [he] did not indicate that he would not have been physically able to return to light duty, pursuant to any medical restrictions, if Columbia Farms had not terminated his employment." Atkinson, 874 F. Supp. 2d at 481.

38

Finding no error with respect to Harris and Jamison, we affirm the district court's judgments in their favor.

IV

For the reasons given, we reverse the judgments (including attorneys' fees) in favor of the 16 plaintiffs who prevailed below on claims under the S.C. Wages Act, concluding that those claims should have been dismissed as preempted under § 301 of the LMRA; we reverse the judgments on the retaliation claims brought by Atkinson, Edens, Johnson, Baisey, Bruster, and Case for their failure to prove their claims; and we affirm the judgments in favor of Harris and Jamison on their retaliation claims.

<u>AFFIRMED IN PART; REVERSED IN PART</u>

KING, Circuit Judge, concurring in part and dissenting in part:

I respectfully disagree with the panel majority's decision except its affirmance of the judgments in favor of plaintiffs Billy Harris and Lisa Jamison on their workers' compensation retaliation claims. Indeed, I would fully affirm the district court, which carefully and capably adjudicated all of the retaliation and unpaid wages claims asserted herein.

With respect to the unpaid wages claims, the district court properly allowed a jury trial on whether defendant Columbia Farms violated the South Carolina Payment of Wages Act by, inter alia, providing written notice to employees that they would be paid based on "clock time," while compensating them for only "line time." See S.C. Code § 41-10-30(A) (requiring "[e]very employer [to] notify each employee in writing at the time of hiring of the normal hours and wages agreed upon," as well as to make "[a]ny changes in these terms . . . in writing at least seven calendar days before they become effective"); see also Carolina Alliance for Fair Emp't v. S.C. Dep't of Labor, Licensing, & Regulation, 523 S.E.2d 795, 803 (S.C. Ct. App. 1999) ("The statute is a notice statute. It is intended to provide the employee with the information requisite to make an educated decision whether or not to accept employment."). Significantly, the evidence was sufficient for the jury to find that — despite Columbia Farms's practice of paying employees

40

premised on "line time," a practice permitted by but not elucidated in the collective bargaining agreement (the "CBA") — each and every document provided to the plaintiffs indicated that their wages would instead be for "clock time." The court thus correctly determined that the plaintiffs presented valid state law claims for recovery of unpaid wages. See Evans v. Taylor Made Sandwich Co., 522 S.E.2d 350, 352-53 (S.C. Ct. App. 1999) (invoking section 41-10-30(A) in upholding a jury verdict and treble back wages award in favor of employees who "interpreted [a posted] document as Taylor Made's promise to pay [them] 0.6133 cents per sandwich produced," but who actually received "wages based on a per package rate, which may include one and a half or two sandwiches"), overruled on other grounds by Barron v. Labor Finders of S.C., 713 S.E.2d 634, 638 (S.C. 2011).

The district court was also right to rule that the unpaid wages claims were not preempted by § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. That is, resolution of the claims did not require interpretation of the CBA, which, again, was silent on the "line time"-"clock time" issue. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988) (explaining that § 301 preemption occurs when "the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement"). Moreover, § 301 does not

41

otherwise preempt "nonnegotiable rights conferred on individual employees as a matter of state law" — here, the right to written notice of their normal hours and wages.  See Livadas v. Bradshaw, 512 U.S. 107, 123 (1994); see also Lingle, 486 U.S. at 409 (observing that "§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements").  Simply put, the CBA did not free Columbia Farms to disseminate misleading wage-and-hour notices or exempt it from the consequences of doing so.

As for the workers' compensation retaliation claims, the district court properly entered judgments for eight plaintiffs — the two that we affirm today, plus the six that the panel majority reverses (those in favor of Natasha Atkinson, Anna Edens, Shiren Johnson, Shirley Baisey, Tamortha Bruster, and Steven Case).  Those latter judgments also merit affirmance because the court heeded controlling principles of South Carolina law, including the following:

- "'In order to prove a claim [of workers' compensation discrimination under South Carolina Code section] 41-1-80, a plaintiff must establish three elements:  (1) the institution of workers' compensation proceedings, (2) discharge or demotion, and (3) a causal connection between the first two elements,'" Atkinson v. House of

42

> Raeford Farms, Inc., 874 F. Supp. 2d 456, 475
> (D.S.C. 2012) (quoting Hinton v. Designer
> Ensembles, Inc., 540 S.E.2d 94, 97 (S.C. 2000));

- "Proving a claim under section 41-1-80 does not require a formal filing of a workers' compensation claim," as "[t]he Supreme Court of South Carolina has held that conduct sufficient to be considered instituting a proceeding includes 'the employer's agreement to pay or payment of medical care or the employer's receipt of written notice from an independent health care provider in the form of a bill for medical services rendered to an injured employee,'" id. (quoting Johnson v. J.P. Stevens & Co., 417 S.E.2d 527, 529 (S.C. 1992)); and,

- "To establish causation under section 41-1-80, the employee must show that he would not have been discharged 'but for' the institution of the workers' compensation claim" — a burden that the employee may satisfy "either by 'persuading the court that the discharge was significantly motivated by retaliation for her exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence,'" id. at 475-76 (quoting Hinton, 540 S.E.2d at 97).

The district court sensibly predicted that the Supreme Court of South Carolina would add to Johnson's non-exhaustive list of proceeding-instituting conduct "an employee's seeking or receiving of medical treatment from the employer accompanied by circumstances which would lead the employer to infer that a workers' compensation claim is likely to be filed." See Atkinson, 874 F. Supp. 2d at 475. Concomitantly, the court reasonably determined that the six plaintiffs instituted proceedings by seeking treatment from the Columbia Farms nurse's

43

office, requesting to see the company doctor, and ultimately resorting to private care for conditions regularly incurred in the workplace and typical of workers' compensation claims — those conditions being "sore hands"/carpal tunnel syndrome (Atkinson, Edens, Johnson, and Baisey), an injured and infected finger (Bruster), and injured hands (Case). As the court recognized, notwithstanding the company nurse's professed beliefs "that carpal tunnel syndrome is [not] a work related injury" and that Bruster's and Case's injuries were sustained elsewhere, see id. at 462, 465, 467, the six plaintiffs had all expressly attributed their conditions to their labors at Columbia Farms.

Finally, the district court's causation rulings were also legally and factually sound. The court concluded that the reason articulated by Columbia Farms for discharging Atkinson, Edens, and Johnson — that they failed to secure notes from their private physicians permitting them to return to work without restrictions — was unworthy of credence. In that regard, the court pointed to the company nurse's testimony "that Columbia Farms generally made accommodations, such as light duty, for employees with workers' compensation injuries." See Atkinson, 874 F. Supp. 2d at 476-77 (explaining that "where an employer sets forth the employee's inability to perform his job duties as the employer's reason for terminating the employee, evidence

44

that the employer had a policy of accommodating employees with workers' compensation injuries, coupled with the employer's failure to accommodate the plaintiff[,] may support that plaintiff's assertion that the employer's proffered reason for termination was mere pretext"). The court further found that, in firing Baisey, Bruster, and Case, Columbia Farms pretextually invoked their excessive attendance points — points that they would not have accumulated but for the company nurse's flimsy appraisal that they sustained their injuries outside the workplace. See, e.g., id. at 478 ("Although Baisey's employment at Columbia Farms included repetitive use of her hands, [the company nurse] independently determined that Baisey's injury was not work related and refused to allow her to visit the company doctor for further assessment. As a result, Baisey received attendance points for the absences associated with her injury, and was terminated from employment.").

Simply put, because I agree with its cogent analysis, I would affirm the district court across-the-board.

45